# UNITED STATES COURT OF APPEAL
# FOR THE SIXTH  CIRCUIT

TRUSTEES OF SHEET METAL WORKERS LOCAL 7
ZONE 1 PENSION FUND; TRUSTEES OF SHEET
METAL WORKERS LOCAL 7 ZONE 1 HEALTH AND
WELFARE FUND; TRUSTEES OF SHEET METAL
WORKERS LOCAL 7 ZONE 1 FIVE CITIES
ASSOCIATION JOINT APPRENTICESHIP AND
TRAINING FUND.

       Plaintiff-Appellants                          Appellants'Appeal

v.                                            Case No.  22-1566

PRO SERVICES, INC., a Michigan Corporation

       Defendant-Appellee

---

    This is an appeal from a March 30, 2022 judgment of the United States

District Court Western District of Michigan Southern Division, Case No. 1:18-cv-

1443.  Dismissing Appellants action against Appellee Pro Services, Inc.

    Brief of Appellants, Trustees of Sheet Metal Workers Local 7 Zone 1

Pension Plan, Trustees of Sheet Metal Workers Local 7 Zone 1 Health and

Welfare Plan and Trustees of Sheet Metal Workers Local 7 Zone 1 Five Cities

Association Joint Apprenticeship and Training Fund.

                          /s/ Frank D. McAlpine
                          Frank D. McAlpine, Attorney
                          for Appellants
                          610 University Drive
                          East Lansing, MI 48823
                          517-449-3847

TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    iii

STATEMENT IN SUPPORT OF ORAL ARGUMENT . . . . . . . . . . . . .    1.

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . .    2.

STATEMENT OF ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    3.

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4.

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . .    10.

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14.

   Whether the trial court erred when it granted summary judgment dismissing the Funds complaint finding the language in the title of the CBA limited its jurisdiction to sheet metal work only in the construction industry and since FMTS worked in the manufacturing industry the sheet metal work of FMTs was not covered by the CBA.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14.

   1. The Court does not explain its reasoning why the title to the CBA limits covered work to the construction industry and ignores Article I and III of the CBA. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15.

   2. Contract titles and headings do not constitute controlling evidence of a contracts substantive meaning. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    17.

   3. The title is not a contractual provision. . . . . . . . . . . . . . . . . . . . . . .    18.

   4. Where the Court finds a contract ambiguous any relevant evidence is admissible to resolve the ambiguity but, if the Court does not find the contract ambiguous the contract is enforced as written.   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19.

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    22.

i

ADDENDUM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    24.

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25.

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    25.

TABLE OF AUTHORITIES

**Cases**                                                                                   **Page**

*Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.*
331 U.S. 519, 67 S. Ct. 1387, 911 L. Ed. 1646 (1947) . . . . . . . . . . . . .    17, 21, 22

*Certified Restoration Dry Cleaning Network v. Tencke Corp.*
511 F.3d 535 (6th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    18.

*Int'l Multifoods Corp. v. Commercial Union Ins. Co.*
309 F.3d 76 (2nd Cir.2002)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1, 13, 19

*Kellogg Co. v. Sabhiok,*
471 F. 3d 629 (6th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    16

*KMS Fusion v. United States,*
36 Fed. Cl 68; U.S. Court of Claims . . . . . . . . . . . . . . . . . . . . . . . . .    8, 19, 21

*M&G Polymers, USA, LLC v. Tackett*
574 U.S. 427 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5, 12, 13.
                                                                                             l8, 21

*Mazzaferro v. RLI Ins.Co.,*
50 F.3d 137 (2nd Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    20

*Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.*
30 F.3d. 692 (6th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    7

*MYD Industries, LLC. v. Blizzard Entertainment Inc.*
(9h Cir. 2011) No. 09-15932, No. 09-16044, R. 128-1, PageID 34487 . .    21

*Plumbers Local 98 Defined Benefit Fund v. Master Plumbers of MI.*
608 F. Supp. 2d 873 (E.D. Mich. 2009) . . . . . . . . . . . . . . . . . . . . . . .    6

*U.S. Gypsum Co. V. Quigley Co. (In Re G-I Holdings, Inc.)*
755 F.3d. 195 (3rd Cir.2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1, 11, 17
                                                                                             22

**Statutes**                                                                    **Page**

29 U.S.C. §§1001-1461 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    2, 4

29U.S.C.  §§1059 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6


**Rules**

FRCP 56 (a)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    14

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

I have had the honor and pleasure to argue a few cases before the 6th and 9th Circuit Courts of Appeal.  In each case, I felt oral argument was a valuable and enlightening step in the process.   In this case, there was no oral argument before the District Court.  I think, if we had oral argument, we may not be before the Circuit Court today.  This case involves rules of contract interpretation.  The Third Circuit in *U.S. Gypsum* Co. V. Quigley Co. *(In re G-l Holdings, Inc.)* 755 F.3d. 195 (3rd Cir. 2014), stands for the proposition that, " The title of a section cannot contradict or rewrite the plain language of the contractual provision within that section.  Contract headings do not constitute controlling evidence of a contract's substantive meaning."  The District Court in our case has a different take on the issue stating in its Opinion, R. 125 PageID.3456.  "As the Court of Appeals for the Second Circuit has held, "[c]aptions are relevant to contract interpretation." *Int'l Multifoods Corp. v. Commercial Union Ins. Co.,* 309 F.3d 76, 85 (2nd Cir. 2002), explaining that contracts must be read as a whole, including any introductory clause or heading, in determining the intent of the parties.  This is an important case.  If the 6th Circuit agrees with the District Court there would be a split between the 6th Circuit and the 3rd Circuit Court.

1.

## STATEMENT OF JURISDICTION

Appellants in this case are the Trustees of the Sheet Metal Workers Local 7 Zone 1 Pension Plan, Trustees of the Sheet Metal Workers Local 7 Zone 1 Health and Welfare Fund and the Five Cities Association Joint Apprenticeship and Training Fund (hereinafter, the Funds). The Funds are multi-employer trust funds established to provide benefits to employees under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001-1461 (ERISA). ERISA provides subject matter jurisdiction.

This is an appeal of right from a March 30, 2022 Opinion and Order of the United States District Court Western District of Michigan, denying the Funds' motion for partial summary judgment and granting Defendant Pro Services' motion for summary judgment and entering a final order dismissing the case. On April 15, 2022 the Funds filed a motion for reconsideration. On June 13, 2022, the District Court denied the Funds' motion for reconsideration and on June 21, 2022, the Funds filed a Notice of Appeal.

## STATEMENT OF ISSUES

**Whether the trial court erred when it granted summary judgment dismissing the Funds complaint finding the language in the title of the CBA limited its jurisdiction to sheet metal work only in the construction industry and since FMTS worked in the manufacturing industry the FMTs were not covered by the CBA.**

1. **The Court does not explain its reasoning why the title to the CBA limits covered work to the construction industry and ignores Article I and III of the CBA.**

2. **Contract titles and headings do not constitute controlling evidence of a contracts substantive meaning.**

3. **The title is not a contractual provision.**

4. **Where the Court finds a contract ambiguous any relevant evidence is admissible to resolve the ambiguity but, if the Court does not find the contract ambiguous the contract is enforced as written.**

## STATEMENT OF THE CASE

The Appellants in this case are the Trustees of the Sheet Metal Workers Local 7 Zone 1 Pension Fund, Health and Welfare Fund and the Joint Apprenticeship and Training Fund, hereinafter, the Funds. The Funds are multi-employer trust funds established to provide benefits to employees under the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§1001-1461 (ERISA).  The Funds are administrated by joint Boards of Trustees, half of whom are Employer Trustees appointed by SMART Local 7 and half Union Trustees.  James Callahan Affidavit R.105-2 PageID.2403.  The Funds pay medical expenses and pensions, and provide training and other benefits for their participants and beneficiaries. The Funds contend that Pro Services, has been using their employees as Full Service Maintenance Technicians (FMTs) to do sheet metal work in violation of Pro Services obligations under the collective bargaining agreement.  It is not disputed that Pro Services is a party and bound by the collective bargaining agreement (CBA).

The Appellee Pro Services, Inc. a privately held industrial contractor, is involved in the supplying of skilled trade workers to companies involved in manufacturing.  VandeMaele Dep. R. 107-5 at PageID.2851.  Pro Services deny that their full service technicians do work covered under the Sheet Metal Worker's

4.

collective bargaining agreement, although they have no records indicating the extent or nature of the work done by the FMTs.

In the fall of 2021, the parties filed cross-motions for summary judgment. Prior to the hearing on the motions for summary judgment, there was a hearing on Defendant Pro Services' Motion to Strike Contractor Witnesses Declarations R. 113, PageID 3341.  The Court granted the Motion to Strike Contractor Witnesses Declarations, stating. "The parties agree that the CBA is "clear and unambiguous" although they disagree about the outcome it dictates.  Under contract law, where a contract is unambiguous its meaning is to be gleaned from the four corners of the document without reference to extrinsic evidence." Order, R. 124, PageID 3444. This is important because extrinsic evidence is admissible to determine the meaning of an ambiguous contract but if the contract is unambiguous the contract is enforced as written. *M&G Polymers, USA, LLC v. Tackett,* 574 U.S. 427, 435 (2015).  The District Court in its Opinion granting summary judgment reverses itself and allows the use of extrinsic evidence, the title, as the sole basis for its finding that the CBA covers only sheet metal work done in the construction industry.

The Funds in their motion, supplied the depositions of FMTs employed by Pro Services who testified they performed sheet metal work on a regular basis while

5.

employed with Pro Services.  FMTs Testimony R. 105-11 through 105-19, PageID.2546 to PageID. 2730.  ERISA mandates that every employer shall maintain records for each of its employees, sufficient to determine what benefits are owed to them. 29 U.S.C. §1059.  Consequently, Pro Services must keep records of work that its employees performed that is covered by the collective bargaining agreement.  Pro Service has admitted to its failure to maintain records of the work that FMTs performed.  Jason Harlofff Deposition R.105-22, PageID.2748.  Pro Services acknowledges that it neither has a job description for a full service maintenance technician nor even knows what work they performed when on assignment with customers.  Pro Services' deliberate ignorance of the work its FMTs perform is not a defense. Instead, Pro Services' failure to maintain records of the work that FMTs perform creates a presumption that all of the work was covered under the collective bargaining agreement.  The presumption in favor of the Funds is well established. " Under Sixth Circuit precedent where an ERISA fund plaintiff has provided proof of an employer's failure to pay fringe benefit contributions on behalf of its employees for work covered by a collective bargaining agreement the burden shifts to the employer to produce evidence as to what work is not covered." *Plumbers Local 98 Defined Benefit Fund v M&P Master Plumbers of Michigan,* 608 F. Supp. 2d 873, 881 (E.D. Mich 2009), citing,

6.

*Michigan Laborers' Health Care Fund v. Grimaldi Concrete, Inc.* 30 F. 3d 692,

696-67, (6th Cir. 1994).

Pro Services in their motion for Summary Judgment raised two issues, the
District Court addressed only the first issue:

> Should Plaintiffs' Complaint be dismissed because the collective
> bargaining agreement between the parties does not apply to the
> work performed by Defendant's Full Service Maintenance Technicians
> ("FMT") because they operate in the manufacturing industry, rather
> than the construction industry?

The Trial Court granted Summary Judgment in favor of Pro Services Inc., on

the first issue and held that:

> "Here, the title of the parties' CBA expressly identified the "Sheet Metal,
> Roofing, Ventilating and Air Conditioning Contracting Division of the
> Construction Industry" and therefore limits the class of workers for whom
> fringe benefit contributions must be made.  The title is clear on its face
> that the CBA applies to employees performing covered work in the
> "Construction Industry" and does not encompass employees performing
> covered work in other industries. Opinion Trial Court p13, EFC 125,
> PageID.3457

This appeal contends that the decision of the Trial Court that the title overrules

language in ARTICLE I TRADE JURISDICTION, is a rewriting of the CBA

under the guise of contract interpretation. CBA Pro Services Exhibit B, R. 107-3,

PageID.2820.  The Trial Court found that the language in the title of the CBA

limited the payment obligation to sheet metal workers working in the construction

industry and since Factory Maintenance Technicians work in manufacturing they are not covered by the collective bargaining agreement.  The trial court throughout its opinion uses the term title, but, the language in the CBA, R.105-5 PageID. 2422, is more akin to a recital since the title of the CBA is **STANDARD FORM OF UNION AGREEMENT**. The following language SHEET METAL, ROOFING, VENTILATION AND AIR CONDITIONING CONTRACTING DIVISION OF THE CONSTRUCTION INDUSTRY is either a subtitle or a recital. Black's Law Dictionary 1462 (11th ed. 2019), defines "recital" as a "preliminary statement in a contract."  A basic rule of contract drafting holds that "no experienced drafter will make the mistake of using such clauses to bear the burden of substantive provisions of the agreement, for courts regard recitals as subordinate to the operative part of the contract." *KMS Fusion v. United States,* 36 Fed. Cl 68, 80, 1996 U.S. Court of Claims, quoting *E. Allen Farnsworth, Farnsworth on Contracts,* 2,§7,10a, p. 260 (1990).

The Funds contend the trial court rewrote the collective bargaining agreement by using language in the title of the CBA to limit the CBA only to sheet metal workers working in the construction industry, excluding sheet metal workers working in the manufacturing or any other industry.  Nowhere in the CBA is there any support for a classification or division of sheet metal workers by the industry

8.

in which they work.  The CBA R. 105-5 PageID.2422, specifically outlines trade jurisdiction in Articles 1 TRADE JURISDICTION SECTION I.  "This agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in but not limited to the :" [sheet metal work] and Article III of the CBA both Articles include all employees of an employer doing sheet metal work regardless of industry. CBA Pro Services Exhibit B. R.105-5 PageID. 2422. Pro Services' attorney in her brief, discussing trade jurisdiction, cleverly omitting the first sentence of Article I Trade Jurisdiction Section I. " This agreement covers the rates of pay and conditions of employment of all employees of the Employer engaged in but not limited to the:" R.105-5, PageID2422.  The District Court in its Opinion R.125 PageID.3450 relying on Pro Services' brief also omits the first sentence of the a statement of Trade Jurisdiction.  The definition of Trade Jurisdiction is vital to understanding this case.  Pro Services contends that Trade Jurisdiction is based on industry (construction, manufacturing, mining, fishing, shipping and others).  The Funds contend jurisdiction is based on the language in Article l and Article lll, the work performed by all employees of the Employer engaged in sheet metal work.   The Court struck the declarations of non-party contractors about the meaning of the collective bargaining agreement (CBA) which forms the contract between the parties. Order, R. 124, PageID.3444.

9.

## SUMMARY OF THE ARGUMENT

Plaintiff the Sheet Metal Workers Funds sued Pro Services, Inc. for using non-union workers, FMTs, to do sheet metal work in manufacturing facilities.  Pro Services was a signatory on a collective bargaining agreement (CBA) with Local Union No. 7 Zone 1.  R.105-5 PageID.2422. The trial court granted summary judgment to Defendant Pro Services, Inc., finding that the title to the CBA limited the class of workers for whom fringe benefit contributions must be made to sheet metal workers in the construction industry and did not include employees performing sheet metal work in the manufacturing industry.  Opinion p.14, R. 125, PageID.3458.

Article I Trade Jurisdiction of the CBA, R. 105-5 PageID.2422, provides "This Agreement covers the rates of pay and conditions of employment of all employees of Employer engaged in but not limited to the:   . . .  [sheet metal work]. Article lll of the CBA, provides: "Section 1.  The Employer agrees that none but journeymen, apprentice, preapprentice sheet metal workers shall be employed on any work described in Article l . . ." The Appellant Funds argue that the trial court erred in entering summary judgment. Four reasons are given contending that the court erred in granting summary judgment.

1.  The court does not explain its reasoning why the title to the CBA limits

10.

covered work to work in the construction industry and ignores Article I Trade

Jurisdiction and Article III Trade Jurisdiction Employees.  Instead the District

Court states, "The title is clear on its face that the CBA applies to employees

performing covered work in the "construction industry" and does not encompass

employees  performing covered work in other industries." Opinion p13-14, R. 125,

PageID. 3458. Pro Services argues that trade jurisdiction is determined by the

industry in which the sheet metal worker is employed.  The Funds argue that all

employees of the employer doing sheet metal work are subject to the CBA.

Although, the Funds disagrees with the District Court regarding the applicability

of the title, if the District Court is correct that the tile is to be considered then, the

title and Article l and Article lll of the CBA are in direct conflict creating an issue

of fact that cannot be resolved on a summary judgment motion.

2.  Contract titles do not constitute controlling evidence of a contracts

substantive meaning.  "The title of a section cannot contradict or rewrite the plain

language of the contractual provisions within that section.  Contract headings do

not constitute controlling evidence of a contract's substantive meaning." *U.S.*

*Gypsum Co. v. Quigley Co. ( In re G-l Holdings, Inc.)* 755 F. 3d 195 (3rd

Cir.2014)

The Funds contend that the District Court should have ignored the language in

11.

the title since, the title can not contradict or rewrite the plain language of an unambiguous contractual provision, and enforced the Trade Jurisdiction in Articles l and lll.  The District Court instead ignored Articles l and ll and enforced the language in the title.  The title of the CBA is extrinsic evident and since the parties and the Court agreed the contract was "clear and unambiguous" the meaning of the CBA is to be determined by the contractual provisions in the CBA. Order, R. 124, PageID 3444.

3.  The title is not a contractual provision.  The District Court based its decision on a misunderstanding of  *M&G Polymers USA*, *LLC v. Tackett,* 574 U.S. 427,135 S. Ct. 926, 190 L. Ed. 2d 809 (2015).  The District Court in its Opinion p R.125, PageID.3458 states:   "However, the Funds' argument would have this Court simply ignore the title, whereas the Supreme Court has instructed that "the rule that contractual provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA [welfare benefits] plan."

The Funds were correct in arguing that the court should ignore the title.  The title to the CBA is not a *contractual provision*. It precedes the text and is not part of the contractual text.  Nothing in the title creates binding rights, duties or enforceable obligations.  The title is similar to a recital in a contract and is subordinate to the operative parts of the contract.

12.

4. The Court did not find the CBA ambiguous. Rather, the Court cited *Int'l MultifoodsCorp. v. Commercial Union Ins. Co.* 309 F. 3d 76, 85 (2nd Cir. 2002) and the statement that contracts must be "read as a whole including any introductory clause or heading to determine the intent of the parties". In *Int'l Multifoods* there was an issue of fact to be determined, intent of the parties, where there is an issue of fact any evidence including introductory clauses and headings can be used to determine the factual issue. In this case there was no factual issue to be determined. When a contract is unambiguous, "contractual provisions ordinarily should be enforced as written. . ." *M & G Polymers USA, LLC. v. Tackett*, 547 U.S. 427, 135 S. Ct. 926, 190 L. Ed 2d. 809 (2015). The District Court instead of enforcing the CBA according to the contractual provisions Article l and Article lll, used language in the title to find the CBA limited trade jurisdiction to sheet metal workers working in the construction industry and not in other industries.

13.

ARGUMENT

**Whether the trial court erred when it granted summary judgment dismissing the Funds complaint finding the language in the title of the CBA limited its jurisdiction to sheet metal work only in the construction industry and since FMTS worked in the manufacturing industry the FMTs were not covered by the CBA.**

1. **The Court does not explain its reasoning why the title to the CBA limits covered work to the construction industry and ignores Article I and III of the CBA.**

2. **Contract titles and headings do not constitute controlling evidence of a contracts substantive meaning.**

3. **The title is not a contractual provision.**

4. **Where the Court finds a contract ambiguous any relevant evidence is admissible to resolve the ambiguity but, if the Court does not find the contract ambiguous the contract is enforced as written.**

Standard of Review.

F.R.C.P. 56(a) provides in part: The court shall grant summary judgment if the movant shows that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.

The District Court found that the language in the title to the CBA limited the class of workers for whom fringe benefit contributions must be made to sheet metal workers working in the construction industry and did not include employees performing covered work in other industries.  Opinion, R.125, PageID.3458.

14.

This is an astounding ruling that cripples Sheet Metal Workers Local 7 Zone1. The Court ignores Article I Trade Jurisdiction and Article III Trade Jurisdiction Employees, CBA R.105-5, which required that fringe benefit contributions be made for all employees performing covered work. Further, the Court edits Article I Trade Jurisdiction, in its Opinion, omitting the first sentence. "This Agreement covers the rate of pay and conditions of employment of all employees of the Employer engage in but not limited to the. . . [sheet metal work]. Opinion R. 125, PageID.3450

The issue in this case is the simple question. Does the language in the title supersede, overrule or limit Article I Trade Jurisdiction and Article III Trade Jurisdiction Employees. There are four reasons why the trial court was incorrect in holding the title of the CBA limits the class of workers entitled to fringe benefits to workers in the construction industry and not other industries.

1. **The Court does not explain its reasoning why the title to the CBA limits covered work to the construction industry and ignores Article I and III of the CBA**

The trial court never adequately explains why the title of the CBA limits the jurisdiction of the CBA to work in the construction industry and why it ignores Article I and II of the CBA. The title states: "SHEET METAL, ROOFING, VENTILATION AND AIR CONDITIONING CONTRACT DIVISION OF THE

CONSTRUCTION INDUSTRY.  The court explains it reasoning by stating, "The title is clear on its face that the CBA applies to employees performing covered work in the "construction industry" and does not encompass employees performing covered work in other industries." Opinion P. 13-14, R.125, PageID.3458.  The title is not clear on its face. Generally, when a party says something is clear on its face, it is a dodge, to avoid explaining why it finds the matter is clear on its face.  The result is absurd. Nothing in the title limits the CBA exclusively to the construction industry.  The Funds cannot understand how the District Court could read an industry limitation into the CBA.  The District Court found the title limited covered work to the construction industry and not other industries,  Article I Trade Jurisdiction states: "This Agreement covers the rate of pay and conditions of employment of all employees of the Employer engaged in but not limited to the (a) manufacture, fabrication, assembling, handling, erection, installation, dismantling, conditioning, adjustment, alteration, repairing, and servicing of all ferrous or nonferrous metal work . . .   Article III states: SECTION 1. " The Employer agrees that none but journeymen, apprentice, preapprentice sheet metal workers shall be employed on any work described in Article 1. . ."  Contracts must be construed consistent with common sense and in a manner that avoids absurd results. *Kellogg Co. V. Sabhiok* 471 F. 3d 629, 636 (6th Cir. 2006).

16.

The Funds disagree with the District Court where the District Court found the title an enforceable part of the contract.  Regardless, the conflict between the title and Articles l and Article lll of the CBA creates at the least, a triable issue of fact that cannot be resolved with a summary judgment motion.

**2. Contract titles and headings do not constitute controlling evidence of a contract substantive meaning.**

A second reason why the trial court was incorrect in holding that the CBA applies only to work in the construction industry is that, contract titles and headings do not constitute controlling evidence of a contract's substantive meaning.  " The title of a section cannot contradict or rewrite the plain language of the contractual provision within that section. Contract headings do not constitute controlling evidence of a contract's substantive meaning." *U.S. Gypsum Co., v. Quigley Co. (In re G-l Holdings, Inc.*) 755 F.3d 195 (3d Cir. 2014).  The court in *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.* 331 U.S. 519, 528-529, 67 S. Ct 1387, 911 L Ed.1646 (1947), addressed this issue.

> But headings and titles are not meant to take the place of the provisions of the text.  Nor are they necessarily designed to be a reference guide or a synopsis.  Where the text is complicated and prolific, headings and titles can do no more than indicate the provisions in a most general manner, to attempt to refer to each specific provision would be ungainly as well as useless. As a result, matters in the text which deviate from those falling within the general pattern are frequently unreflected in the

17.

> headings and titles. Factors of this type have led to the wise
> rule that the title of a statute cannot limit the plain meaning of
> the text. (citations omitted) For interpretative purposes, they
> are of use only when they shed light on some ambiguous word
> or phrase. They are but tools available for resolution of a doubt.
> But they cannot undue or limit what the text makes plain.

Under Michigan law, before courts look to extrinsic evidence, courts look to the intent of the parties as expressed by the plain language of a contract's terms. If the contract terms are not ambiguous, that is, if they do not allow reasonable conflicting interpretations, then the court enforces the contract's terms. *Certified Restoration Dry Cleaning Network v. Tencke Corp.,* 511 F.3d 535, 543-544 (6th Cir. 2007). Titles and headings are not contract terms. Contracts titles and headings do not trump or overrule the plain meaning of the text. Article I Trade Jurisdiction and Article III Trade Jurisdiction Employees are clear and unambiguous and must be enforced as written. *M&G Polymers USA, LLC v. Tackett,* 574 U.S. 427, 435, 135 S. Ct. 926, 190 L.Ed. 2d 809 (2015).

3. **The title is not a contractual provision.**

The trial court in its Opinion R.125 PageID. 3458 states:

> However, the Funds' argument would have this Court simply
> ignore the title, whereas, the Supreme Court has instructed that
> "the rule that contractual provisions ordinarily should be enforced as
> written is especially appropriate when enforcing an ERISA [welfare
> benefits] plan." M & G Polymers USA, LLC v. Tackett, 547 U.S. 427,
> 435 (2015)(citation omitted).

18.

Yes, the Funds' argument is that the District Court should ignore the title because the title is not a contractual provision. The rule in *M & G Polymers* is that "*contractual provisions* ordinarily should be enforced as written . . ." The title to the CBA is not a contractual provision. It precedes the text and is not part of the contractual text. Nothing in the title creates binding rights, duties or enforceable obligations. The title is similar to recitals in a contract and subordinate to the operative parts of the contract. *KMS Fusion v. United States*, 35 Fed Cl. 68, 80, U.S. Court of Federal Claims 1996. The contractual provisions that should be enforced are Article I and Article III of the CBA. The Supreme Court in M & G Polymers (supra) makes it clear, contractual provisions are determinative in enforcing ERISA plans. Since there is no ambiguity in the CBA, the CBA should be enforced as written,


**4. Where the Court finds a contract ambiguous any relevant evidence is admissible to resolve the ambiguity but, if the Court does not find the contract ambiguous the contract is enforced as written.**

The District Court cited *Int'l Multifoods Corp. v. Commercial Union Ins. Co.* 309 F.3d 76, 85 (2d Cir 2002**),** explaining that contracts must be "read as a whole, including any introductory clauses or headings, to determine the intent of the

parties". Opinion, R.125, PageID 3456**.**  The District Court in quoting *Int'l Multifoods* at p. 85, leaves off the beginning of the quote.  The full quote states, "A contract of insurance must be read as a whole, including any introductory clause or heading to determine the intent of the parties."  The court in *Int'l Multifoods* relies on *Mazzaferro v. RLI Ins. Co.*, 50 F.3d 137 (1994) which like *Int'l Multifoods* involves the interpretation of an insurance contract.

> " A contract of insurance must be read as a whole, including any
> introductory clause or heading, to determine the intent of the parties."
> *Save Mart Supermarkets v. Underwriters at Lloyd's London,* 843
> F. Supp. 597, 607(N.D. Cal. 1994) (quoting *Ogburn v. Travelers Ins.,*
> 207 Cal. 50, 52-53, 276 P. 1004 (1929). *Mazzaferro* (supra) p. 140.

*Int'l Multifoods* like *Mazzaferro* concerned a dispute of fact as to the intent of the parties. The insurance contract was ambiguous as to the intent of the parties and whether the contract of insurance covered a claim.   Where a contract is ambiguous the court can use headings and introductory clauses to resolve the ambiguity.  The court in *Int'l Multifoods* found the insurance contract ambiguous.  The District Court in this case never found the CBA ambiguous.   A title that contradicts the plain language of a contractual provision does not create an ambiguity because contract titles are not controlling evidence of a contracts substantive meaning.  Although, introductory clauses, titles and headings cannot create an ambiguity, they can be used to resolve an ambiguity.  The District Court

confuses this issue citing *Int'l Multifoods* (supra) for the proposition that contracts must be "read as a whole, including any introductory clause or heading to determine the intent of the parties".  This reading by the District Court is contrary to the Court instructions in *M & G Polymers*, 547 U.S. at 435, "the rule that contractual provisions ordinarily should be enforced as written is especially appropriate when enforcing an ERISA [welfare benefit] plan."  Introductory clauses, also know as recitals, and headings are not contractual provisions.  *KMS Fusion v. United States*, 36 Fed. Cl. 68, 80, U.S. Court of Claims 1996. *Citing, E. Allen Farnsworth, Farnsworth on Contracts 2*, § 7, 10a P. 260 (1990).  The Supreme Court in*, Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.,*331 U.S. 519, 529-529, 67 S.Ct. 1387, 91 L Ed. 1646 (1947) explains when titles can be used.

> Factors of this type have led to the wise rule that the title of a statute cannot limit the plain meaning of the text. (Citations omitted) For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase.  They are but tools available for resolution of a doubt.  But they cannot undo or limit that which the text makes plain.

See also, *MDY Industries, LLC v. Blizzard Entertainment Inc.* (9th Cir 2011) No. 09-15932, No. 09-16044, R.128-1, PageID 3487. Introductory clauses, titles and headings cannot be used to create an ambiguity where no ambiguity exist.

21.

CONCLUSION

The Funds believe the law as stated in *Gypsum Co. V. Quigley Co. (In re G-l Holdings, Inc.* 755 F.3d 195 (3ʳᵈ Cir. 2014) is directly on point and resolves the issues in this appeal.  "The title of a section cannot contradict or rewrite the plain language of the contractual provisions within that section.  Contract headings do not constitute controlling evidence of a contract's substantive meaning." The United States Supreme Court came to the same conclusion in *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R.,* 331 U.S. 519, 528-529, 67 S. Ct. 1387, 91 L.Ed.1646 (1947) stating: "Factors of this type have led to the wise rule that the title of a statute cannot limit the plain meaning of the text. (Citations omitted) For interpretive purposes, they are of use only when they shed light on some ambiguous word or phrase.  They are but tools available for resolution of a doubt. But they cannot undo or limit that which the text makes plain".  The parties and the District Court found the CBA to be unambiguous, Order, R.124, PageID.3444.

22.

The Appellants request the Court to set aside the granting of summary judgment in favor of Pro Services, Inc. and return the matter back to the District Court for further proceedings regarding the cross-motions for summary judgment.


Dated: September 6, 2022

   /s/  Frank D. McAlpine
Frank D. McAlpine, Attorney for
Appellants, Trustees of Sheet Metal
Workers Local 7 Zone 1 Pension Fund
Trustees of Sheet Metal Workers
Local 7 Zone 1 Health and Welfare
Fund and Five Cities Association,
Joint Apprenticeship and Training
Fund
610 University Drive
East Lansing, Michigan 48823
517-449-3847
Fdmcalpine@gmail.com

CERTIFICATE OF COMPLIANCE
This document contains 5,841 words as defined by FRAP3 generated
by Word Perfect software.

 /s/ Frank D. McAlpine
Frank D. McAlpine,
Attorney for Appellants


CERTIFICATE OF SERVICE
On, September 6, 2022, I certify that I electronically filed this document with
the Clerk of the Court through the ECF System, which will send notice of such
electronic filing to all counsel of record registered electronically.

 /s/ Frank D. McAlpine
Frank D. McAlpine, Attorney
for Appellants

ADDENDUM

Designation

1. Sheet Metal Workers Funds Complaint R. PageID. ## 1-3

2. Collective Bargaining Agreement (CBA) R.105-5 PageID## 2422-2450

3. Order Striking Contractor Witnesses R. 124 PageID 3444.

4. SMW Funds Motion for Summary Judgment R. 104 PageID ##2373-2374

5. SMW Funds Brief in Support of Motion for Summary Judgment R. 105

PageID.##2375-2770.

6. Pro Services' Motion for Summary Judgment R.106 PageID. ##2771-277

7. Pro Services' Brief in Support of Motion for Summary Judgment R. 107

PageID. ##2773-2465.

8. Response in Opposition to SMW Funds Motion for Summary Judgment R. 108

PageID. ##2960-3103.

9. Corrected Response in Opposition to Pro Services' Motion for Summary

Judgment, R. 111 PageID. ## 3262-3329.

10. Judgment in favor of Pro Services R. 126 PageID# 3460.

11. Opinion and Order granting Motion for Summary Judgment R. 125 PageID.

##3445-3459.

12. Notice of Appeal R.133 PageID. #3533

25.